Argued January 19, reversed February 14, 1928.

## RIVERS BROS. *v.* C. F. T. COMPANY, INC.

(264 Pac. 368.)

**Bills and Notes—Holder, Suing on Trade Acceptances, Established Prima Facie Case by Introducing Acceptances, Whose Execution was Admitted, and Proving Ownership (Or. L., § 7851).**

1. In action on trade acceptances by holder against maker, plaintiff established *prima facie* case by introducing trade acceptances, whose execution was admitted, and by proving its ownership thereof; plaintiff being presumed to be holder in due course under Section 7851, Or. L.

**Bills and Notes—Holder of Trade Acceptance may Rely on Presumption That He Holds in Due Course Until Defect in Title of Person Negotiating Instrument Appears, After Which Holding in Due Course must be Established (Or. L., § 7851).**

2. In action by holder to recover amount due on trade acceptances, holder is entitled to rely on presumption, under Section 7851, Or. L., that he is holder in due course until evidence is offered by defendant showing that title of person negotiating instrument was defective, in which case it was incumbent on holder

---

1. See 3 R. C. L. 1037.

to establish by greater weight of evidence that it was holder in due course.

Sales—Answer to Holder's Suit on Trade Acceptances, Alleging Payee Failed to Ship Machines of Kind Ordered, Did not Allege Failure of Consideration (Or. L., § 7847).

3. In action by holder on trade acceptances against maker thereof, answer alleging that payee failed to ship washing-machines of kind and quality ordered for which acceptances were given, not alleging that execution of acceptances was obtained through duress or other unlawful means, or for illegal consideration, given every reasonable intendment to which pleading was entitled after verdict, did not allege failure of consideration under Section 7847, Or. L., but rather breach of warranty.

Bills and Notes—Failure of Consideration of Trade Acceptances is No Defense Against Holder in Due Course.

4. In action on trade acceptances, failure of consideration is no defense against holder in due course.

Bills and Notes—General Denial Does not Put in Issue Allegations of Complaint That Plaintiff is Holder in Due Course (Or. L., § 7851).

5. In action by holder on trade acceptances against maker, general denial of allegations of complaint that plaintiff is holder in due course does not put such matter in issue, and is not sufficient to overcome presumption of holder in due course, under Section 7851, Or. L., attaching to negotiable paper.

Bills and Notes—Facts Showing Defective Title must be Alleged and Proved to Overcome Prima Facie Case, in Action on Trade Acceptances (Or. L., § 7847).

6. In action by holder on trade acceptances against maker, to overcome *prima facie* case established by holder on introduction of trade acceptances, admission of execution, and proof of ownership it was necessary for maker to allege and prove facts showing defective title under Or. L., § 7847.

Bills and Notes—Evidence in Holder's Action on Trade Acceptances Failed to Make Issue of Fact Whether Plaintiff 'was Holder in Due Course, Requiring Directed Verdict for Plaintiff.

7. In action by holder on trade acceptances against maker, uncontradicted evidence that holder purchased trade acceptances before maturity at face value, less 8 per cent discount, which was market price, after investigating financial standing of maker, without any testimony tending to show that plaintiff had knowledge of particular transaction for which acceptances were given or any fact raising inference of bad faith, failed to make issue of fact for jury, and required court to direct verdict for plaintiff.

Evidence—Testimony of Admission Concerning Nonpayment by Attorney for Plaintiff Suing on Trade Acceptances Held Inadmissible as Declaration Against Interest, Where Shown to be Unauthorized.

8. In action on trade acceptances, testimony as to admission by plaintiff's attorney that acceptances had not yet been paid for

was inadmissible as declaration against interest, where record disclosed statement, if made, was without authorization of plaintiff.

**Evidence—Testimony of Admission of Nonpayment by Attorney for Plaintiff Suing Maker on Trade Acceptances Held Hearsay and Incompetent.**

9. In action on trade acceptances, testimony as to admission by plaintiff's attorney that acceptances had not yet been paid for was hearsay and incompetent, and was not rendered admissible because made by attorney for plaintiff.

**Appeal and Error—Bills and Notes—Whether Purchaser of Trade Acceptances Acted in Good Faith Would Ordinarily be for Jury, Whose Finding Would be Conclusive, if Supported by Any Facts.**

10. Ordinarily, whether plaintiff, in purchasing trade acceptances sued on, acted in good or bad faith, would be question of fact for jury whose finding of bad faith would be conclusive, if there was any fact from which reasonable inference could be deduced that plaintiff was not acting in good faith.

**Bills and Notes—Question Whether Plaintiff was Holder in Due Course of Trade Acceptances is for Court, Where Evidence is Uncontradicted.**

11. In action by purchaser on trade acceptances against maker, question of holder's good faith is for court, where evidence is uncontradicted thereon.

**Trial—Uncontradicted Evidence Does not Require Directed Verdict, Since Evidence, if Unreasonable or Improbable, Makes Jury Question.**

12. Mere fact that evidence is uncontradicted does not make it incumbent on court to instruct as matter of law what verdict is to be rendered, since evidence, if unreasonable or improbable, would make question for jury.

Bills and Notes, 8 **C. J.**, p. 920, n. 33, p. 930, n. 62, p. 967, n. 27, p. 980, n. 21, p. 983, n. 43, p. 984, n. 49, p. 988, n. 95, p. 1045, n. 81, p. 1046, n. 9, p. 1047, n. 10, p. 1062, n. 63.
Evidence, 22 **C. J.**, p. 199, n. 36, p. 376, n. 21.

From Josephine: C. M. Thomas, Judge.

Department 2.

REVERSED.

For appellant there was a brief and oral argument by *Mr. Myer C. Rubin.*

---

9. See 10 **R. C. L.** 958.
12. Court's right to direct verdict although evidence is uncontradicted, see note in 8 **A. L. R.** 802. See, also, 26 **R. C. L.** 1067.

For respondent there was a brief over the name of *Mr. W. T. Miller,* with an oral argument by *Mr. James T. Chinnock.*

BELT, J.—This is an action to recover amount alleged to be due on two trade acceptances of which plaintiff claims to be a holder in due course. These bills, each in the sum of $220, were drawn on May 31, 1923, by the Cascade Products Company on the defendant corporation and were accepted by it on the same date. The acceptances were executed by the defendant company, which was engaged in business in the City of Grants Pass, Oregon, in payment for certain washing-machines contracted to be delivered by the Cascade Products Company. It is alleged that the plaintiff purchased the acceptances before maturity, for value, and without notice of any infirmity in the bills or defect in the title of the person negotiating them.

The answer admits the execution of the trade acceptances, but denies that the plaintiff is the holder in due course. As a further and separate defense, after reciting the execution of the instruments, it is alleged that the "Cascade Products Company agreed to ship the said washing-machines immediately upon receipt of said order and that the said Cascade Products Company failed, neglected and refused to fill said order and did not ship the kind and quality ordered, and by reason thereof the defendant herein refused to pay the amount agreed upon."

Further: "The defendant alleges that the plaintiff herein is not the holder of said instruments in writing, as set forth in plaintiff's complaint and that the said alleged transfer of the bill of exchange was not

made at all, or if made, was done for the purpose of defrauding the defendant herein.'' And finally:

''That the plaintiff had knowledge that the Cascade Products Company had not fulfilled their part of the obligation with the defendant herein, and that the said alleged transfer, if made, was fraudulent and for the purpose of defrauding the defendant by trying to make it appear that the plaintiff was the holder in due course of the said trade acceptances.''

Plaintiff replied with a general denial to the affirmative matter as above stated.

On these issues the cause was submitted to a jury and a verdict returned in favor of the defendant. Plaintiff appeals.

1, 2. Was the plaintiff entitled to a directed verdict? It established a *prima facie* case by introducing the trade acceptances whose execution was admitted, and by proving its ownership thereof. By virtue of Section 7851, Or. L., plaintiff is presumed to be a holder in due course. It had the right to rely upon this presumption until evidence had been offered by defendant showing that the title of the person negotiating the instruments was defective. If such were shown by the defendant, it was incumbent upon plaintiff to establish by the greater weight of the evidence that it was a holder in due course. Section 7847, Or. L., provides:

''The title of a person who negotiates an instrument is defective within the meaning of this act when he obtained the instrument, or any signature thereto, by fraud, duress, or force and fear, or other unlawful means, or for an illegal consideration, or when he negotiates it in breach of faith or under such circumstances as amount to fraud.''

124 Or.—11

3. In the answer of the defendant no facts were alleged upon which the charge of fraud could be predicated. The pleader seems to have been content merely to allege conclusions. No contention is made that the execution of these acceptances was obtained through "duress, or force and fear, or other unlawful means, or for an illegal consideration." If the title is defective, within the meaning of the act, it is by reason of its negotiation "in breach of faith or under such circumstances as amount to fraud." Turning again to the pleading and giving it every reasonable intendment to which it is entitled after verdict, we find there was no allegation of failure of consideration for the acceptances. It is alleged that the Cascade Products Company did not ship washing-machines of "the kind and quality ordered." In other words, we take it that defendant complains of a breach of warranty.

4–6. While failure of consideration is no defense against a holder in due course, it might well be argued that, if the Cascade Products Company had failed to deliver any washing-machines, the negotiation of the trade acceptances, under such circumstances, would be a breach of faith and would amount to the perpetration of a fraud. The general denial of the allegations of the complaint that plaintiff is a holder in due course does not put such matter in issue and is not sufficient to overcome the presumption of the statute attaching to negotiable paper: *Holdsworth* v. *Anderson Drug Co.,* 118 Va. 359 (87 S. E. 565); *First National Bank of Buffalo* v. *Wallace,* 50 N. D. 330 (196 N. W. 303); *Gulf States Steel Co.* v. *Ford,* 173 N. C. 195 (91 S. E. 844). To overcome the *prima facie* case established by plaintiff it was necessary for

the defendant to allege and prove facts showing a defective title.

7. Let us assume, although we do not so decide, that there is an issue under the pleadings whether the plaintiff is a holder in due course. It appears, without contradiction, that the plaintiff, which is a San Francisco firm dealing in negotiable paper, acquired these trade acceptances before maturity and is the owner and holder thereof. There is evidence that, prior to the purchase of the bills in question—which was at face value less 8 per cent discount—the plaintiff made investigation, through a commercial agency, as to the financial standing of the defendant. It had knowledge of the facts that the Cascade Products Company was in the business of selling merchandise and accepting trade acceptances in payment therefor. It is recited in the bill of exceptions that the "purchase of these instruments was made in the course of plaintiff's business," and that the discount of 8 per cent was the market rate at San Francisco on papers of this nature. There is no testimony tending to show that the plaintiff had any knowledge of this particular transaction whereby a high-powered salesman evidently persuaded a merchant to cast to the winds all business caution. There are no facts or circumstances surrounding the negotiation of these bills from which an inference of bad faith could be drawn. Mr. French, of defendant company, testified that he made a trip to San Francisco to investigate this matter and to demand return of the acceptances and was advised by Mr. Alexander of Cascade Products Company that he would have to see an attorney named Ringole who represented plaintiff in such matters. Mr. French says that he went to Ringole's office and told him, "We would not pay any more of those

acceptances until we had got the machines.'' Continuing, Mr. French testified that Ringole said: ''They have not paid for the acceptances yet and was waiting for some other fund.'' Referring to this alleged admission, the witness continued, ''I did not understand the conversation. I did not know exactly what he meant and could not go into details and ask a man what his business was other than my own. And he turned to this young man (the office boy who had accompanied French) and told him such and such was the case; that they had not received the money up to that time because of some particular fund.''

8, 9. This testimony relating to an alleged admission of Ringole, attorney for the plaintiff company, is inadmissible. So far as the record discloses, the statement, if made, was without authorization of the plaintiff and, therefore, may be rejected as a declaration against interest. The fact that Ringole was an attorney for the plaintiff did not, under the circumstances, render the testimony admissible. It was hearsay and incompetent: *Welch* v. *Johnson,* 93 Or. 591 (183 Pac. 776, 184 Pac. 280); *Toomey* v. *Casey,* 72 Or. 290 (142 Pac. 621); *Walk* v. *Hibberd,* 65 Or. 497 (133 Pac. 95); *Kabat* v. *Moore,* 48 Or. 191 (85 Pac. 506); 2 R. C. L. 977.

If we eliminate from our consideration the testimony concerning the statement of Ringole there is absolutely no evidence tending in the slightest degree to refute the contention that plaintiff is a holder in due course. The sale of the washing-machines was at Grants Pass, Oregon, while the acceptances were negotiated at San Francisco, California. It is highly improbable that the plaintiff knew anything about the sale in question. There are no suspicious circum-

stances surrounding the negotiation of this paper to indicate bad faith.

10, 11. Ordinarily, whether plaintiff in purchasing these acceptances acted in good or bad faith would be a question of fact for the jury. If there was any fact present from which a reasonable inference could be deduced that plaintiff was not acting in good faith, the finding of the jury would be conclusive: *Everding & Farrell* v. *Toft,* 82 Or. 1 (150 Pac. 757, 160 Pac. 1160). However, in the instant case we are not precluded from denying the conclusiveness of the finding of the jury for the reason that there was no evidence to support it. It is idle to argue that the question of the good faith of the plaintiff was for the jury when there was no contradiction in the testimony on that phase of the case. As stated in *Fehr* v. *Campbell,* 288 Pa. 549, 137 Atl. 113:

"The question of the good faith of a holder of commercial paper is generally one of fact for the jury, but where the evidence is undisputed and conclusive, it is the court's duty to decide the point as a matter of law and instruct the jury accordingly."

12. Of course, the mere fact that the evidence is uncontradicted does not make it incumbent upon the court to instruct, as a matter of law, what verdict should be rendered. Even though the evidence be uncontradicted, if it were unreasonable or improbable, it would, nevertheless, be a question for the jury to determine. In view of the record in this case, it was the duty of the court to allow plaintiff's motion for a directed verdict. There was no issue of fact to submit to the jury: *Eisenberg* v. *Lefkowitz,* 142 App. Div. 569 (127 N. Y. Supp. 595); *Newton County Bank* v. *Cole* (Mo. App.), 282 S. W. 466; *Omaha Steel Works* v. *Martin,* 78 Colo. 560 (243 Pac. 619); *Whit-*

*tlesey* v. *Drake*, 43 Idaho, 623, 253 Pac. 621; *Security Finance Co.* v. *Thompson*, 216 Ky. 364 (287 S. W. 938); *Porter* v. *Fronheiser*, 86 Pa. Super. Ct. 354.

The judgment of the Circuit Court is reversed and one is hereby rendered against the defendant for the sum of $440, together with interest thereon at the rate of 6 per cent per annum from May 31, 1923. No attorney fees will be allowed for the reason that the record does not contain any evidence as to what would constitute a reasonable attorney fee for the prosecution of this action.

REVERSED AND DECREE ENTERED.

RAND, C. J., and BEAN and BROWN, JJ., concur.